323-0102 consolidated with 323-0103. The people of the state of Illinois, Applee v. Dwight E. Musson, Appellant. Good morning. Good morning, Your Honor. It's nice to see you this morning. Mr. Swanson, are you ready to begin? Yes, ma'am. You may start. Thank you. May it please the court, counsel. My name is Nathan Swanson. I am here today on behalf of Dwight Musson. Mr. Musson appeals the dismissal of his second stage post-conviction petition following his conviction of a bench trial. I would note that one of his claims on his post-conviction petition was advanced to a third stage, at which point it was denied, but he does not appeal that denial. Mr. Musson's post-conviction attorney raised a number of allegations of constitutional violation in the petition. Amongst those was an actual innocence claim, as well as ineffective assistance of counsel, and a vindictive prosecution claim. I'm sorry, a selective prosecution claim. Mr. Musson argues on appeal that he received unreasonable assistance of post-conviction counsel with regards to those claims. Now, an actual innocence claim, taking that one first, an actual innocence claim requires as a threshold point that there be newly discovered evidence. That evidence has to be material, it has to be non-cumulative, and it has to be of such a certain nature that it would have resulted in a different verdict. The state moved to dismiss that claim and said there was no newly discovered evidence, and Mr. Musson's post-conviction counsel sat silent and made no argument as to that point. What the trial court noted, however, was that there was some newly discovered evidence, specifically a note from a Bridget Price saying that she would return the day that Sova, the individual who perished, overdosed with heroin. The trial court stated that they couldn't consider that note because it wasn't attached to the motion, and that is certainly true, it was not attached. However, pursuant to 725 ILCS 5-122-2, the court could consider that evidence if there was an explanation contained within the petition of why it was not attached, and there was, the petition specifically stated. Mr. Musson's father had had possession of that note, he could not locate it, and he was attempting to do so. So when the trial court said they couldn't consider it, the trial court should have, but Mr. Musson's post-conviction counsel did not argue that, and that was unreasonable. Similarly, Mr. Musson's petition argued that he had received ineffective assistance of counsel because, of trial counsel, I'm sorry, because trial counsel failed to argue that again. The state moved to dismiss, and Mr. Musson's post-conviction counsel stood silent, stood on the motion, didn't take any effort to amend. Now, there was evidence in the record to support that allegation. There was evidence both in trial counsel's possession, there was evidence in, and then there was the note which was newly discovered, but again, post-conviction counsel didn't raise any of those, didn't make that clear, and again, we would argue that that was unreasonable assistance of post-conviction counsel. Now, this leads to, for this case to be remanded, then those arguments had to have some merit, and I think from the record, it's clear that they did. There was evidence in the record, and in trial counsel's possession, it's clear from that, that could have been used to argue that after Mr. Musson left his father's home, left Sova there, that she was alive at least two hours later. There was evidence that she had been using her cell phone, that a message that was received about two hours later, 930, had been marked red. There was evidence in the form of a white powder, subsequently identified as cocaine, on the bedspread when Ms. Sova was located, the test deposit, or I believe I said a test deposit for cocaine. Mr. Musson's affidavit stated that was not there when he left in the morning. There was also a condom that was used, as well as a condom wrapper, that again, Mr. Musson stated both was not there when he left, as well as that he had never used condoms when he was engaging in sexual intercourse with Ms. Sova. And then finally, there was that note from Bridget Price. Had those arguments been brought to the trial court, then there would have been a substantial showing of a constitutional violation to advance both the actual innocence claim, as well as the ineffective assistance of counsel claim to the third stage. So, depending on how you slice it, there's two ways that this should be resolved. Either the matter should be remanded because there was unreasonable assistance of post-conviction counsel so that the petition can be amended, and those arguments can be presented properly to the trial court, and they can make a ruling about whether it should go to the third stage, or under the de novo standard review that's appropriate, the matter can be advanced to the third stage just by this court. Mr. Musson also argued that he received ineffective, I'm sorry, unreasonable assistance of post-conviction counsel because post-conviction counsel did not request post-conviction DNA testing. Now, this kind of goes back to the condom that was located. Again, the affidavit from Mr. Musson, that was included, that is not refuted by the record in any way, was that that condom that was located was not there when he left and that he had never used it. Now, what is the logical inference of that? It's that somebody else was present and engaged in sexual intercourse, either with Ms. Sova or otherwise somehow, after he left. If that's the case, then there's a potential alternative perpetrator here. There's somebody else who potentially could have provided Ms. Sova with the heroin that contributed to her death. But post-conviction counsel didn't make any effort to have that tested. Had it been tested, had it come back as to a third person, then there's a reasonable chance that that would constitute newly discovered evidence that would have resulted in a different verdict. Post-conviction counsel should have done that, but did not. With regards to the selective prosecution claim, again, the petition alleged selective prosecution that Mr. Musson was prosecuted to the exclusion of other people who were equally culpable. But a selective prosecution claim requires that Mr. Musson belonged to a protected group or there's some sort of arbitrary classification that would have been unconstitutional, and there was no allegation of that. That claim would have failed on its face. But had that claim been raised as a vindictive prosecution claim based on the evidence that was in the record, that would be a different story. The evidence in the record was that Ms. Musson was a member of the police department that initially investigated her death, that he was in contact with members of that police department and with the coroner who investigated. To get to the third stage on a vindictive prosecution claim, the evidence would have needed to be that there was some sort of animus from the police department that can be attributed to the prosecutor's office that resulted in the prosecution. But post-conviction counsel didn't raise that claim. Instead, they raised a claim for which there was no evidence. Then there wasn't anything to support it. It would be frivolous to raise claims if you can't support them, but that's effectively what post-conviction counsel did and did to the exclusion of claims that did make a substantial showing of a constitutional violation. So on that basis, we would ask that this court do one of two things. Either remand the matter so that reverse the judgment dismissing those claims, remand the matter for the opportunity for Mr. Swanson to have alternative counsel amend his petition to properly present the claims, or that this court find that there was a substantial showing of a constitutional violation with regards to the actual innocence and to the ineffective assistance of counsel claims and remand the matter for a third stage proceeding. Mr. Swanson, this was retained counsel, right? Correct, Your Honor. Yes. So to what extent is a party bound by the decisions that his retained counsel makes or takes? Well, to the extent that those decisions are reasonable, I believe would be the standard here. Certainly, if post-conviction counsel, retained or otherwise, makes a determination that reasonably that some issue shouldn't be raised, they're bound by that. But Rule 651, although that requires a certificate from appointed counsel after there's been a pro se petition, the case law says that that's just a vehicle for guaranteeing the reasonable assistance of counsel that any petitioner is entitled to. So this is somewhat of a roundabout way of answering your question, but a post-conviction petitioner, I think under the case law, cannot be bound to an unreasonable decision of post-conviction counsel, retained or otherwise. Okay, thank you. Mr. Swanson, thank you. Sorry, Justice. Mr. Swanson, so the retained counsel filed the claim for selective prosecution, but gave no supporting evidence as to the class that the individual, the defendant, resided or was a part of so as to raise that claim, but then did file for vindictive, but then failed to file for vindictive, correct? Correct. Okay, thank you. Are there any other questions for Mr. Swanson? No, no. Okay, Mr. Atwood. Good morning, Your Honors. Counsel, may it please the court, my name is Nicholas Atwood and I'm appearing on behalf of the people of the state of Illinois in this matter. One of the first issues that defendant raised was this actual innocence claim based on the note. He argued that his counsel performed unreasonably because he did not support the actual innocence claim by arguing that the court was wrong for not considering the existence of the note. Now, however, in order to prove actual innocence, this evidence has to actually be newly discovered and of such a conclusive nature that it would change the result of trial on a retrial. Counsel here wasn't unreasonable for failing to do this because the actual claim has no merit. Counsel can't be unreasonable for failing to support a meritless claim. And the reason this claim is without merit is because the note is not newly discovered. Defendant's own affidavit stated that on June 27th, Bridget Price left that morning and left a note to him explaining that she would later return. Bridget Price's interview indicated that defendant was present when she did this on June 27th, not that she left a note, but that she spoke to him on June 27th before she left. Now, part of the other problem is that there is no note. It's never been produced in 11 years since then. We argued in our brief that the house was searched by police, there were photographs taken, items belonging to Bridget Price were noted and located, but the note was never produced. Now, I understand that in the second stage of these proceedings, we would take the defendant's allegation as true, but there are some exclusions to that concept. In People v. Allen, the Illinois Supreme Court stated that you have to look to whether the allegations in that petition are capable of independent corroboration. That precedent has been applied at the second stage of proceedings in a case called People v. Hunt, 2023, ILAP second, 220153. And the problem here is that even if we were to assume this note ever existed, defendant has still not produced this note. It's not capable of being independently corroborated. And moreover, when we consider what the content of that note would be, to be newly discovered evidence, you have to have shown diligence in that it could have been discovered sooner. The defendant could have gone to Bridget Price and asked her, did you leave a note? What did it say? She cooperated with the police investigation, she provided information, but he never did that. So this can't be considered newly discovered because no due diligence was ever produced in either getting the note into the court or ascertaining the content of that note through the original author of the note. And so on that basis, the court was correct, even though it ruled on a different matter related to the note and counsel couldn't have been unreasonable for not providing support for a note that didn't exist. Now, a second issue I wanted to address was in the defendant's reply brief, and it has to do with the raising the issue of identity in the context of the post-conviction counsel's unreasonableness for not filing a motion to perform DNA testing on the condom that was found. So in order for DNA testing in a post-conviction context to occur, the first thing that has to happen is that identity actually has to be an issue at trial, and the case law says truly at issue. Now, in defendant's opening brief, he argued extensively regarding the identity of heroin provider, but at trial, that evidence was, that wasn't the theory of the case. Defendant argued, he admitted that he provided the heroin, multiple bags of it, and the independent evidence corroborated that. He only challenged the issue of causation, and he provided an expert, a medical expert that testified that she didn't die from a heroin overdose, she died from a cocaine overdose that Sova had obtained independently. That was the theory. We argued that defendant couldn't raise that motion because identity wasn't an issue, and also that this was an invited error scenario because that was the procedure with which they proceeded at trial. The condom was available to be tested. A sexual assault kit had been performed on the victim. Everything was there to test that DNA if they truly believed at that time that identity was an issue, and because they didn't, and now they're claiming that that should have been tested, that falls under the offices of error. But in his reply brief, defendant's reply to that argument was to say, well, the argument at trial addressing causation with the cocaine was the functional equivalent of challenging identity. First, that would not truly bring identity at issue. It was a causation defense, and second, the people would ask the court to disregard or strike that argument because it's not actually responsive to the people's argument. Defendant only argued about the identity of the heroin provider in his original brief. He wrote an entirely new argument in his reply brief saying, well, actually, we're talking about the identity of the cocaine provider. In People v. Ocardo 139, ILAP 813, a similar situation occurred where the state argued forfeiture, and then the defendant replied with a completely different argument alleging a separate basis to avoid the forfeiture. So we would ask the court to disregard that, but to the extent the court would even consider it. The cocaine was not the cause of Sova's death, and the evidence from Bridget Price's interview, which is contained in the record, she specifically stated that defendant and Sova were doing cocaine and heroin on that night. So there's really no basis to say, well, this cocaine that was tested in the bedroom came from another individual when the record tells us those two were using cocaine that night and that Sova frequently used cocaine. So there's no independent basis to support that. So we don't believe that the identity was proven. Additionally, the third element in that context that has to be proven was a sufficient chain of custody regarding the DNA testing. So we will concede that the condom was collected and it was stored by police initially. It has to be more than that. It's not simply that the condom was delivered to the police. You have to prove that it's present and it's been kept in such a manner that it could still be tested and produce a result because the entire purpose of this statute was to deal with technological advances that came later. So when defendants initially challenged identity in a sexual assault case over years later, new technology became available to test substances for DNA. They can now have this statutory vehicle to access it. Here, we know that this condom was photographed, but it was never admitted as physical evidence at trial. There was some indication that evidence was sent to the Illinois State Police for testing, but we don't know which particular pieces of evidence. The condom wasn't specifically listed as an item that was sent. If it was sent, we have no idea if it was returned. Even if it was returned, we have no idea whether it's been stored in such a way that it could be tested properly today, 11 years later. Now, shouldn't the prosecutor know that? That's exactly what I'm getting to, Your Honor, absolutely. There's some case law that says the prosecutor should have a basis for knowing whether that occurred, but in this context, in a post-conviction context, there's nothing that would have prevented the defendant from ascertaining whether that evidence was present so that he could plead it properly. It's just not available on the face of the petition. And in Jones and Moore, two separate cases said that the defendant's petition failed, in part because there was no evidence of the current condition of the specimen or that it could be tested. So, some cases say the prosecutor should have that information available, but other cases also talk about you need to sufficiently plead that particular issue. Another argument I briefly wanted to address was the ineffective assistance of trial counsel claims. We argue that those are forfeited because those claims should have been raised on direct appeal and were not. The defendant argued essentially that his counsel was ineffective because he failed to find someone else who would take responsibility for providing the heroin that ultimately caused Sova's death. But the case law is clear on this, and Molstad cited in our brief, no amount of diligence on behalf of counsel would force an individual to violate their Fifth Amendment right against self-incrimination. And we presume that counsel attempted to get these affidavits to support the potential existence of other sources, but was unable to do so. And additionally, if we look at the merits of that claim that other sources could have potentially provided the heroin, we have extensive evidence throughout the record where defendant admitted that he provided multiple bags. Now, defendant's claim is that someone else came after he left at 7.40 that morning and before he returned. The individuals he named were Bridget Price, Brian Blesson, Justin Kulovich, and Barry Bird. So, Blesson testified that he was at work by 8 a.m. that morning where he worked with the defendant. He also had attempted to text Sova, and we know that ultimately that text message was read, but there's no timestamp on the read receipt. This was, I think, before we even had read receipts 10 or 11 years ago. And so, what we also know is that the cell phone, Sova's cell phone, was out of the chain of custody. It was possessed by her father at least on the 29th, so it could have been read then, and then somehow subsequent to her own death or when she was comatose, text messages were sent from that phone. So, the mere fact that he sent her a message that was read doesn't indicate that she was actually alive during that time period. What we know is that at 7.40 in the morning when defendant left, he noted that he tried to rouse her, and she made a gurgling sound and couldn't be roused, but that he was late for work, so he left. Hours later, when Barry Bird arrived, he testified at trial that she was cold to the touch, and then defendant, when he subsequently came after Bird left, testified that she was in the same position as when he left her. That information was supported by Dr. Stockmall's rhabdomyolysis. Now, with the rhabdomyolysis, the doctor testified that she had been laying completely still for hours in order to show those signs. He actually said several hours at least, and so when we look at this evidence, Sova was in no condition on that morning to interact with other people, to obtain heroin from another source, to sit up and use that heroin, and then subsequently suffer a fatal overdose from that time, and so when we look at this in the context of the reasonable assistance claim, which is less than an ineffective assistance of claim, you can't blame counsel for not being able to get affidavits for someone else to incriminate themselves. It's presumed by the law that he tried to obtain affidavits to support that contention. She physically was in no position to even perform the acts that defendant said she tried to perform, and there was no evidence that anyone else other than Byrd and defendants saw her that day. Bridget Price never testified or never stated in her interview that she actually returned if we were to assume the note was accurate, and so given all of that, I don't believe counsel acted unreasonably when he wasn't able to obtain affidavits that support that claim. With regard to the vindictive and selective prosecution claims, we conceded in our brief that counsel was unreasonable for raising the selective prosecution claim because he clearly failed to properly plead that claim. You have to have facts that are in support of it, and he did not allege the defendant was of a particular class. Now on appeal, counsel argues that he should have raised a vindictive claim. However, counsel can't be found to have been unreasonable for failing to raise a meritless claim, and the vindictive prosecution claim is without merit. In order to succeed on a vindictive prosecution claim, you have to show that an agency had such animus towards the defendant that they in some way prevailed upon the prosecutor to make that decision to prosecute. Now defendant has noted that Sova's father was angry with him. Sova's father is a retired police officer. First and foremost, he's not a representative of any agency for the purposes of a vindictive prosecution. He's a retired private citizen. Moreover, he's the victim's father. This is not the context in which a vindictive prosecution claim would occur because he has no agency authority to apply pressure to a prosecutor. Certainly as a victim's family member, even if there were evidence he had pushed the prosecutor to file a charge against the defendant, he had every right to do so. But there is no evidence that he did that. What we do have is the case was ultimately transferred from Joliet, where her father had previously been an officer, to Shorewood. That was done because that is where the incidents occurred. Shorewood police had jurisdiction to perform the investigation. The procedural history of this case involved defendant being initially charged with unlawful possession of a controlled substance, which was based on his own admissions that he had the heroin and he had provided it to Sova. When she subsequently passed away in the hospital, there was probable cause to elevate those charges to a drug-induced homicide. There's simply no evidence whatsoever that an agency interfered with the prosecutor's investigation or charging decision in this case. And in fact, all the facts and evidence support an appropriate initial charge that was subsequently elevated when new facts occurred that justified the initiation of those charges. And so based upon that, fact that the victim's father may have had an angry conversation with the defendant simply fails to establish any element of vindictive prosecution, especially in light of all the appropriate bases for charging the defendant with drug-induced homicide. Do your honors have any other questions on any of the other issues or those claims I just made? No. Well, with that, the people would ask this court to affirm the trial court's dismissal of defendants petition as well as his conviction and sentence. Thank you. Thank you, Mr. Atwood. Mr. Swanson, any rebuttal? Just briefly, your honor. Unsurprisingly, I would disagree with much of what Mr. Atwood argued. But to start with this, with regards to what time Sova passed away, the doctor did testify that there was several hours. He didn't say how many hours. The state argues that the evidence about the phone, that the text message was marked red. Well, there's an explanation for that about why that could have happened after she had passed away or while she was comatose. And that is an explanation that could have been argued. But that's not the stage we're at right now. The stage we're at right now is whether or not there's substantial showing of a constitutional violation. And that's not the only evidence. There was also Mr. Musson's affidavit, which said that neither the powder nor the condom nor the rapper was there when he left. The court takes those allegations as true right now unless they are positively refuted by the record and they are not positively refuted by the record. That would constitute evidence that she was still alive after he left at 740. Now, any other evidence about gurgling and time and all those things, those are fine counterarguments, but they do not positively refute the allegation here. With regards to the note, the state argues that it was not susceptible to independent corroboration. That would be untrue. Certainly, Mr. Musson's father could corroborate the existence of the note. If he had possession of it, he could say that he saw it. Whether or not the trial court ultimately at a third stage hearing would believe the existence of the note, that's a credibility determination. And we do not make the credibility determination now. To say it's completely not possible, it's just inaccurate. And then finally, the last point I would make is that the state relies on Jones and Moore for the idea that for DNA testing, Mr. Musson needed to argue more about, have specific evidence about the condom being in police custody, still available for testing, all those things. But Perez, which postdates both Moore and Jones, made clear that the defendant doesn't know this. All he can know is that it was seized and that normally the state would maintain possession of it. I think any attorney would tell you that 10 years later, that evidence is still maintained by the state until the case is completely wrapped up. The record contains enough to all that Mr. Musson could at this stage, that that evidence was seized, that it would therefore logically be still in the possession of the state and that it would have been maintained possible for testing. Therefore, post-conviction counsel should have raised that. And if there aren't any other particular questions, I deal the rest of my time. See no other questions. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible.